## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**KELLY JO NYANJOM,** on behalf of herself
and others similarly situated,

      **Plaintiff,**

      **v.**

**NPAS SOLUTIONS, LLC,**

      **Defendant.**

**Case No. 21-CV-1171-JAR-ADM**

## MEMORANDUM AND ORDER

Plaintiff Kelli Jo Nyanjom brings this putative class action against Defendant NPAS

Solutions, Inc., alleging that Defendant violated the Fair Debt Collection Practices Act

("FDCPA") when it communicated her personal and/or confidential information to a letter

vendor in violation of 15 U.S.C. § 1692c(b).  Defendant moves to dismiss for lack of subject-

matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and, alternatively for failure to state a claim

under Rule 12(b)(6) based in part on the argument that the statute is unconstitutional (Doc. 5).

The United States has intervened for the limited purpose of defending the constitutionality of

§ 1692c(b).[1]  For the reasons set forth in detail below, the Court finds that Plaintiff has failed to

allege a concrete recognizable injury and grants the motion to dismiss for lack of standing.

Therefore, the Court need not reach the merits of Defendant's constitutional challenge to the

statute.

---

[1] Doc. 32; *see* 28 U.S.C. § 2403(a) (authorizing intervention "[i]n any action . . . wherein the
constitutionality of any Act of Congress affecting the public interest is drawn in question"); Fed. R. Civ. P. 5.1(c)
(permitting the Attorney General to intervene in an action where the constitutionality of a federal statute is
challenged); Fed. R. Civ. P. 24(a)(1) (permitting a nonparty to intervene when the nonparty is given an
unconditional right to intervene by a federal statute).

## I.      Standards

A party may move to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) via a facial or a factual attack.[2]  "A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction."[3]  By contrast, a factual attack goes beyond the allegations in the complaint and presents evidence to challenge jurisdiction.[4]  Here, Defendant brings a facial attack because it challenges the sufficiency of Plaintiff's Complaint.[5]  Thus, the Court accepts the allegations in the Complaint as true and considers whether those allegations establish subject-matter jurisdiction.[6]

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[7]  "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[8]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[9]

---

[2] *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020).

[3] *Id.* (citation omitted).

[4] *Id.*

[5] *See* Doc. 6 at 4–7.

[6] *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[8] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.     Background

For purposes of the pending motion to dismiss, the Court accepts the following well-pleaded factual allegations as true.  On March 5, 2021, Defendant caused a written communication to be sent to Plaintiff in connection with the collection of a personal medical debt.[10]  This letter disclosed that Plaintiff is an alleged debtor, the existence of her alleged debt, and the "outstanding account balance" on the debt; identified the creditor, a medical facility; disclosed the date of the patient service at issue; disclosed account numbers; identified an amount for which Defendant would resolve the alleged obligation; and disclosed "other personal information" specific to Plaintiff and her alleged obligation.[11]

Defendant did not print or mail the March 5 letter to Plaintiff itself.[12]  Rather, Defendant transmitted the information about Plaintiff and her alleged medical debt to a letter vendor, RevSpring, Inc. ("RevSpring"), that fashioned, printed, and mailed the letter to Plaintiff.[13]  Defendant did so even though Plaintiff did not provide her consent.[14]  Plaintiff alleges that as a result of her debt-related information being shared without her knowledge or consent, Defendant invaded her privacy, disclosed private facts about her, and caused her to feel embarrassment.[15]

## III.     Discussion

Where a defendant seeks dismissal under Rule 12(b)(1) and Rule 12(b)(6) in the alternative, "the court must decide first the 12(b)(1) motion for the 12(b)(6) motion would be

---

[10] Doc. 1 ¶¶ 26–27.

[11] *Id.* ¶¶ 28–31.

[12] *Id.* ¶¶ 32–33.

[13] *Id.* ¶¶ 33, 43–53.

[14] *Id.* ¶¶ 41–42.

[15] *Id.* ¶¶ 75–78.

moot if the court lacked subject matter jurisdiction."[16]  Similarly, courts must consider nonconstitutional grounds prior to reaching any constitutional questions.[17]  Accordingly, the Court first addresses whether Plaintiff's Complaint adequately alleges standing.

Article III of the Constitution permits federal courts to decide only "Cases" or "Controversies."[18]  The party seeking federal jurisdiction bears the burden to establish standing.[19]  To establish Article III standing, Plaintiff must adequately show that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[20]  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"[21]

Defendant's standing challenge focuses on the "concrete-harm requirement" of the injury-in-fact inquiry.[22]  The Supreme Court recently explained in *TransUnion LLC v. Ramirez* that tangible harms, including monetary harms or physical injury, are among those that "readily qualify as concrete injuries under Article III."[23]  Intangible harms, such as reputational harms, disclosure of private information, and intrusion upon inclusion, may also be concrete if the alleged harm has a "close relationship to harms traditionally recognized as providing a basis for a lawsuit in American courts."[24]  This requires the plaintiff to identify "a close historical or

---

[16] *Mounkes v. Conklin*, 922 F. Supp. 1501, 1506 (D. Kan. 1996) (citation omitted).

[17] *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981).

[18] U.S. Const. art. III, § 2; *see Hollingsworth v. Perry*, 570 U.S. 693, 704 (2016).

[19] *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021).

[20] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

[21] *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

[22] *TransUnion*, 141 S. Ct. at 2204.

[23] *Id.*

[24] *Id.* (citing *Spokeo*, 578 U.S. at 341) (collecting cases).

common-law analogue for the[ ] asserted injury."[25]  The injury need not be "an exact duplicate" of the common-law harm.[26]  "[I]n a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm."[27]

With respect to statutory harms, *TransUnion* held that simply citing a statutory violation does not satisfy this requirement.[28]  Rather, the plaintiff must have suffered real adverse effects beyond the "bare procedural violation[s]" of the statute.[29]  Congress's views on whether a harm is sufficiently concrete "may be 'instructive.'"[30]  To establish standing, a plaintiff must not only show that the defendant's conduct violated a statute, but that she was "*concretely harmed* by a defendant's statutory violation."[31]

Here, Plaintiff alleges Defendant violated § 1692c(b) by communicating with a third-party letter vendor regarding her debt without consent or permission.  She argues that the harm encompassed in this claim is akin to a traditional American tort, public disclosure of private facts.  Defendant argues that such an action requires Plaintiff to prove two key elements that are neither alleged nor present on these facts.

The Restatement defines the "Publicity Given to Private Life" tort as follows:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
>
> > (a)  would be highly offensive to a reasonable person, and

---

[25] *Id.*

[26] *Id.* at 2209.

[27] *Id.* at 2210–11.

[28] *Id.* at 2205 (citing S*pokeo*, 578 U.S. at 341).

[29] *Id.* at 2213.

[30] *Id.* at 2204 (quoting *Spokeo*, 578 U.S. at 341).

[31] *Id.* at 2205.

(b) is not of legitimate concern to the public.[32]

The Restatement commentary instructs that "[p]ublicity" requires communication with so many persons that the matter must be regarded as public knowledge.[33]  As noted, while common-law analogues are informative, a concrete harm does not require an exact copy in American history.[34]

"Whether an alleged § 1692c(b) violation is akin to the tort of public disclosure of private facts is an open question."[35]  Plaintiff points to the Eleventh Circuit decision in *Huntstein v. Preferred Collection & Management Services, Inc.* ("*Hunstein I*"), where the court held a similar letter-vendor claim under § 1692c(b) bears a close relationship to the invasion-of-privacy category of torts.[36]  There, the plaintiff sued a debt collector for transmitting to a third-party mailing vendor the plaintiff's name, outstanding debt balance, the fact that the debt resulted from the plaintiff's son's medical treatment, and his minor son's name.[37]

Based in part on the Supreme Court's ruling in *TransUnion*, the Eleventh Circuit vacated its original ruling and entered a superseding one, wherein the majority stood by its holding that the plaintiff had standing ("*Hunstein II*").[38]  The court concluded that the plaintiff's § 1692c(b) letter-vendor allegations could establish Article III standing because they alleged a harm similar in kind to the common-law tort of public disclosure of private facts because both violations

---

[32] RESTATEMENT (SECOND) OF TORTS § 652D (1977).

[33] *Id.* § 652D, cmt. a.

[34] *See TransUnion*, 141 S. Ct. at 2204.

[35] *Shields v. Prof'l Bureau of Collections of Md., Inc.*, No. 20-cv-2205-HLT-GEB, 2021 WL 4806383, at *3 (D. Kan. Oct. 14, 2021).

[36] 994 F.3d 1341 (11th Cir.), *vacated and superseded on reh'g by* 17 F.4th 1016 (2021).

[37] *Id.* at 1345.

[38] 17 F.4th 1016 (11th Cir.) ("*Hunstein II*"), *reh'g en banc granted, vacated by* 17 F.4th 1103 (2021).

involve disclosing private information to a third party.[39]  The court reasoned that it did not matter that the disclosure was to a significantly less degree than disclosures typical of actionable public-disclosure-of-private-facts claims; it was enough that "*some* . . . disclosure . . . occurred."[40]  The court further noted that Congress identified invasions of individual privacy as "one of the harms against which the statute is directed," and thus "the judgment of Congress also favor[ed]" the plaintiff.[41]

The dissent, however, found there was no publicity as required by the purportedly analogous common-law tort because the plaintiff had alleged only that the information was communicated to a third-party letter vendor,[42] and that courts analyzing this privacy tort have required "publicity in the broad, general sense of the word 'public.'"[43]  The dissent also disagreed with the majority's conclusion that Congress intended to prohibit all transmissions of information to third parties, noting that other sections of the FDCPA implicitly allow such transmissions.[44]  The dissent agreed that the judgment of Congress did not favor Plaintiff's claim.[45]  The Eleventh Circuit recently granted rehearing en banc and vacated *Hunstein II*.[46]

---

[39] *Id.* at 1023–28.

[40] *Id.* at 1027–28.

[41] *Id.* at 1032 (citing 15 U.S.C. § 1692(a)).

[42] *Id.* at 1042 (Tjoflat, J., dissenting) ("[C]ommunication could lead to publicity if the communication was to a large group of people, such as to be public.  But communication can also be private, and just because it could be public does not mean that it actually was public.").

[43] *Id.* at 1041 (quoting *Tureen v. Equifax, Inc.*, 571 F.2d 411, 418 (8th Cir. 1978)).

[44] *Id.* at 1046 ("It seems odd that Congress would hamper the very process it codifies in § 1692g, writing debtors about their debt, by banning the use of mail vendors, who simply send out the written notices about debt, under the language of § 1692c(b).").

[45] *Id.* at 1047 n.13 (noting the Bureau of Consumer Financial Protection ("CFBP"), which has the authority to issue rules under the authority of the FDCPA, recently issued new rules that "expressly contemplate the use of mail vendors in debt collection") (citing 85 Fed. Reg. 76734, 76738 (Nov. 30, 2020) (to be codified at 12 C.F.R. § 1006), 86 Fed. Reg. 5766, 5845 n.446 (Jan. 19, 2021) (to be codified at 12 C.F.R. § 1006)).

[46] 17 F.4th 1103 (11th Cir. 2021).

By contrast, district courts outside of the Eleventh Circuit have dismissed similar letter-vendor claims under § 1692c(b).[47]  In this district, Judge Teeter dismissed a similar claim for lack of standing in *Shields v. Professional Bureau of Collections of Maryland, Inc.*[48]  There, the plaintiff claimed that the defendant communicated details about her student-loan debt to a third-party letter vendor in violation of § 1692c(b).[49]  The court dismissed the § 1692c(b) claim because it found no traditional common-law tort analogous in kind to the alleged injury.[50]  Judge Teeter stressed that *Hunstein I* is not binding on courts in this district as the Tenth Circuit has not ruled on this theory, and therefore has "limited persuasive authority" given it preceded the Supreme Court's decision in *TransUnion*.[51]  Finally, Judge Teeter found that even if sending debtor information to a single letter vendor counted as publicity for standing purposes, it was "hard to imagine that" disclosing that the plaintiff had student-loan debt "is highly offensive to a reasonable person."[52]

This Court joins Judge Teeter and several district courts outside the Tenth Circuit in concluding that Plaintiff does not have standing to bring her § 1692c(b) letter-vendor claim. Because the Eleventh Circuit majority came out substantially the same way in *Hunstein II*, Judge Teeter's analysis in *Shields* still applies.  And although the Eleventh Circuit has granted

---

[47] *See Cavazinni v. MRS Assocs.*, No. 21-CV-5087 (ARR) (ST), 2021 WL 5770273, at *6 (E.D.N.Y. Dec. 6, 2021); *Sputz v. Alltran Fin., LP*, No. 21-CV-4663 (CS), 2021 WL 5772033, at *6 (S.D.N.Y. Dec. 5, 2021); *Lui v. MRS BPO, LLC*, No. 21 C 2919, 2021 WL 5630764, at *3–4 (N.D. Ill. Nov. 30, 2021); *Keller v. Client Servs., Inc.*, No. 3:21-cv-50218, 2021 WL 5578794, at *4–5 (N.D. Ill. Nov. 30, 2021); *Ciccone v. Cavalry Portfolio Servs., LLC*, No. 21-CV-2428 (JS)(JMW), 21-CV-3764 (JS)(AYS), 2021 WL 5591725, at *3–5 (E.D.N.Y. Nov. 29, 2021); *In re FDCPA Mailing Vendor Cases*, Nos. 21-2312, 21-2587, 21-3002, 21-3383, 21-3434 & 21-3462, 2021 WL 3160794, at *5 (E.D.N.Y. July 23, 2021).

[48] No. 20-cv-2205-HLT-GEB, 2021 WL 4806383, at *3 (D. Kan. Oct. 14, 2021).

[49] *Id.*

[50] *Id.*

[51] *Id.* (citing *In re FDCPA Mailing Vendor Cases*, 2021 WL 3160794, at *5 (recognizing *TransUnion* erodes the basis for the Eleventh Circuit's ruling in *Hunstein I*)).

[52] *Id.* (citation omitted).

rehearing en banc and vacated *Hunstein II*, the Court respectfully finds the dissent's reasoning more persuasive than that of the majority.

First, the Court agrees with the rationale that sharing information about a debtor with a third-party letter vendor is not sufficiently analogous to an invasion of privacy. Plaintiff does not allege that anyone has read her information rather than processed it or that there has otherwise been publicity. Rather, Defendant is alleged to have disclosed information about Plaintiff's medical debt to third-party letter vendor RevSpring, not to the public at large or even beyond RevSpring's computer to its employees. Nothing in the Complaint alleges or suggests that communicating Plaintiff's information to the letter vendor made that information available to the public at large or even to so many persons that the matter must be certain to become public knowledge. Moreover, that information must be highly offensive to a reasonable person for the FDCPA claim to be analogous to the common-law claim. While Defendant disclosed that Plaintiff had a medical debt, as opposed to generic debt-related information, "[w]hat matters is not so much the amount or nature of the debt, but to whom the information is exposed."[53] The Complaint does not allege that Defendant disclosed sensitive information such as the name of a minor, nor does it specify what "other personal information" was disclosed besides the basic details of the alleged debt.

Further, the Supreme Court in *TransUnion* observed that disclosures to printing vendors have not historically constituted "publication" under defamation law, a much lower bar than the "publicity" required under an action for public disclosure of private facts.[54] In *TransUnion*, the Court used this distinction to reject an argument that the plaintiffs had standing because

---

[53] *Sputz, v. Alltran Fin., LP*, No. 21-CV-4663 (CS), 2021 WL 5772033, at *5 (S.D.N.Y. Dec. 5, 2021).

[54] *TransUnion*, 141 S. Ct. at 2210 n.6; *see* RESTATEMENT (SECOND) OF TORTS § 625D, cmt. a.

defamatory statements were published internally among the defendant's employees; because such internal publication circumvented a key element of a defamation claim, it could not support standing under a purportedly analogous statute.[55]  "While *dicta*, this language appears dispositive of" the letter-vendor theory advanced by Plaintiff.[56]  Thus, Plaintiff fails to correlate her alleged harm with one traditionally recognized by American courts.

Second, the Court finds this rationale to be consistent with evidence of congressional intent.  The FDCPA was enacted in order "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."[57]  The legislative history describes the types of invasions of privacy that Congress was concerned about as "disclosing a consumer's personal affairs to friends, neighbors, or an employer."[58]  "Thus, it appears Congress intended to target certain especially harmful debt collection practices—not all communication by debt collectors to third parties."[59]  Indeed, several courts have likened the role of a letter vendor to a "modern-day stenographer or clerk," noting that the FDCPA has not prohibited certain communications to such ministerial entities as they have done with employers.[60]

---

[55] *TransUnion*, 141 S. Ct. at 2210 n.6.

[56] *In re FDCPA Mailing Vendor Cases*, 2021 WL 3160794, at *5–6; *accord Shields v. Prof'l Bureau of Collections of Md., Inc.*, No. 20-cv-2205-HLT-GEB, 2021 WL 4806383, at *3 (D. Kan. Oct. 14, 2021).

[57] 15 U.S.C. § 1692(e).

[58] S. Rep. No. 95-382, at 2 (1977).

[59] *Cavazinni v. MRS Assocs.*, No. 21-CV-5087 (ARR) (ST), 2021 WL 5770273, at *6 (E.D.N.Y. Dec. 6, 2021).

[60] *Id.* (citing 15 U.S.C. § 1692c(a)(3); *Sputz v. Alltran Fin., LP*, No. 21-CV-4663 (CS), 2021 WL 5772033, at *6 (S.D.N.Y. Dec. 5, 2021) (quoting *Quaglia v. NS193*, No. 21-CV-3252 (N.D. Ill. Oct. 12, 2021) (unpublished) ("[It] is difficult to imagine Congress intended for the FDCPA to extend so far as to prevent debt collectors from enlisting the assistance of mailing vendors to perform ministerial duties, such as printing and stuffing the debt collectors' letters, in effectuating the task entrusted by creditors—especially when so much of the process is

Finally, while the Tenth Circuit has not ruled on the letter-vendor theory, it recently held that a single unwanted creditor phone call in violation of § 1692c(c) was the same kind of harm recognized in the common-law tort of intrusion upon seclusion, and thus the plaintiff had suffered a concrete harm.[61]  In *Lupia v. Medicredit, Inc.*, the defendant received a letter from the plaintiff demanding that it cease calling her about an unpaid debt.[62]  The next day, before the defendant had processed the letter, it again called the plaintiff regarding the debt.[63]  The plaintiff brought suit under the FDCPA, alleging that the defendant violated § 1692c(c) by continuing to call her after it received her cease-and-desist letter, and that the single call caused her "to suffer intangible harms, which Congress has made legally cognizable in passing the FDCPA."[64]  The court found that the plaintiff had standing even though one call was not the same degree of intrusion required at common law.[65]  The Tenth Circuit agreed, holding that although "a single phone call may not intrude to the degree required at common law, we are meant to look for a 'close relationship' in kind, not degree."[66]

In *Shields*, however, Judge Teeter declined the plaintiff's request to apply the Tenth Circuit's rationale in *Lupia* to her § 1692(b) letter-vendor claim, noting the statutory injury in that case was different in *degree* from the common law whereas in *Shields*, the statutory injury was different in *kind*.[67]  In *Shields*, the plaintiff did not allege that anyone read her debt

---

presumably automated in this day and age.  In the Court's view, such a scenario runs afoul of the FDCPA's intended purpose to prevent debt collectors from utilizing truly offensive means to collect a debt.")).

[61] *See Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1190–93 (10th Cir. 2021).

[62] *Id.* at 1187.

[63] *Id.*

[64] *Id.* at 1190–91.

[65] *Id.* at 1192–93.

[66] *Id.* at 1191.

[67] *Id.*

information, rather than merely processed it, or that there had otherwise been publicity.[68] Because the plaintiff failed to allege a concrete harm, she lacked standing.[69]  The same is true in this case—Plaintiff has failed to allege a concrete injury-in-fact that is the same in kind as the common-law tort of invasion of privacy—and thus the Court also declines to apply the rationale in *Lupia* here.

In sum, Plaintiff's failure to establish a concrete and particularized injury-in-fact sufficient to establish Article III standing deprives this Court of subject-matter jurisdiction over her claim.  Accordingly, the Court grants Defendant's Rule 12(b)(1) motion.  The Court does not reach Defendant's alternative arguments under Rule 12(b)(6).

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant NPAS Solutions, L.L.C.'s Motion to Dismiss (Doc. 5) under Fed. R. Civ. P. 12(b)(1) is **granted**; Plaintiff's case is **dismissed without prejudice** for lack of Article III standing.

**IT IS SO ORDERED**.

Dated: <u>January 19, 2022</u>

         S/ Julie A. Robinson
        JULIE A. ROBINSON
        UNITED STATES DISTRICT JUDGE

---

[68] *Id.* (citing *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190, 2210 n.6 (2021)).

[69] *Id.*